IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEPHEN MURMER,

        Plaintiff,

v.                                                          Civil Action No. 3:07cv608

CHESTERFIELD COUNTY SCHOOL BOARD, et al.,

        Defendants.

**PROPOSED FINDINGS OF FACT**

        COME NOW the Defendants, by counsel, and for their Proposed Findings of Fact, state as follows:

        1.      In 1999, Defendant Chesterfield County School Board adopted the Core Values of Respect, Responsibility, Accountability, and Honesty, as standards by which all members of the community of the Chesterfield County Public Schools, including teachers, were thereafter expected to abide.

        2.      Murmer began teaching at Monacan High School (the "School") in August of 2002.

        3.      Murmer began creating butt paintings prior to becoming employed by the School Board. To create the butt paintings, Murmer typically: (1) sits in paint without any garments between the paint and his bare buttocks, scrotum, and penis; and (2) presses his paint covered body parts onto a canvas.

        4.      Murmer annually received letters from the Superintendent of the Chesterfield County Public Schools from 2002 through 2006, reminding him of the Core Values of the School Board and his responsibility to serve as a role model. Murmer read these letters and understood that the Core Values applied to him as a teacher and that he was responsible to serve as a role model.

        5.      In or around October of 2003, Murmer voluntarily appeared for the video recording of an interview concerning his butt paintings for use on a television show called Unscrewed with Martin Sargent. During portions of the videotaped interview, the Plaintiff appeared in a skin tight black thong, which revealed his bare buttocks, he sat in paint and then sat on a canvas to leave a print from the paint on his buttocks.

6. During the week of December 4, 2006, multiple significant classroom and hallway disruptions occurred at the School from students discussing Murmer's butt paintings and his appearance on Unscrewed with Martin Sargent, which was now readily available for viewing on the Internet (the "Internet Video").

7. Disruptions began on December 4, 2006, in a Sports Marketing class taught by Kerrie Rosenzweig, which was being conducted in a computer lab. Students in the class began discussing and then arguing about whether Murmer was the butt painter, whom they had seen on the Internet. At least one student searched for websites relating to Murmer and butt painting during the class. Ms. Rosenzweig repeatedly attempted to redirect the students back to their work, but the students continued raise the subject. The students directly asked Rosenzweig her opinion on these matters and Rosenzweig continued to try to redirect them.

8. On December 6, 2006, when the same Sports Marketing class met again, Rosenzweig used several techniques in an effort to minimize disruption from students discussing Murmer, butt painting and the Internet Video, but she had limited success. In particular, Rosenzweig changed her plans to take the students back to the computer lab, even though they needed to complete research on a report that she had assigned to them. Instead, Rosenzweig followed a lecture format. Despite her efforts, classroom level discussion and side conversations about Murmer and butt painting repeatedly arose among the students in the class. Experiencing disruptions during a lecture when students were to be taking notes was unusual for Rosenzweig.

9. Rosenzweig was confronted again by students in the same class on Friday, December 8, 2006, the day on which Murmer was suspended with pay. This time the students accused her of causing Murmer to be fired. On the same day, students also disrupted Rosenzweig's other classes by students raising issues concerning Murmer, butt painting, and the Internet Video.

10. On December 7, 2006, during an Advanced Placement Latin class taught by Linda Wagstaff students confronted her with questions concerning Murmer, butt painting, and the Internet Video. Wagstaff attempted to end these disruptions by telling the students that they should not spread rumors and by other methods. Despite Wagstaff's efforts, the students persisted throughout the class in discussing, whispering, and laughing about Murmer, butt painting, and the Internet Video. Wagstaff lost valuable class time as a consequence of these disruptions and the class completed less work in the class than otherwise would have been completed.

11. Anne Rieser, an art teacher and Chair of the Arts department at the School, experienced disruptions from students discussing Murmer, butt painting, and the Internet Video in her Art III and Art IV classes on December 6, in her Photography I class on December 7, 2006, and in her Art IV class on December 8, 2006. Aside from classroom level comments, in these classes, there was whispering and side conversations throughout class on these subjects. As a consequence of these numerous disruptions, students completed less work in these classes.

12. In one of Murmer's classes on December 8, 2006, at the beginning of class, while Rieser assisted the substitute teacher for the class in setting up a video to show to the class, one

of the students raised the subject of Murmer and his butt painting by suggesting that the class could watch Murmer's Internet Video.

13. On December 4, 2006, upon first learning of disruption in the Sports Marketing class, Defendant David Sovine, the Principal of the School, instructed that Rosenzweig should redirect her students, if they raise the subject again.

14. On December 6, 2006, when Sovine received reports that the disruption had grown into some art classes of Rieser and continued in the Sports Marketing class, Sovine again instructed that teachers experiencing disruption should redirect their students.

15. On December 7, 2006, when Sovine learned that the disruptive classroom discussions of Murmer and butt painting were continuing, growing, and included discussion of an Internet Video that students were viewing, Sovine watched the Internet Video and called Defendant Dr. Lyle Evans, Assistant Superintendent of Human Resources, to request help.

16. On December 8, 2006, before class, Sovine brought Murmer to his office for a meeting with Evans. Murmer acknowledged that it was him in the Internet Video.

17. Sovine explained to Murmer that teachers were reporting classroom disruptions based on discussion of Murmer, butt painting, and the Internet Video. Evans informed Murmer that he would be placed on administrative leave with pay based on the disruptions in the classroom environment and to enable time to complete an investigation.

18. Sovine requested that Murmer not discuss his personnel matters with staff and students of the School. Sovine requested this because he wanted to limit further disruption of the learning environment at the School during the investigation.

19. At no time did Evans tell Murmer that he was restricted from speaking on any subjects.

20. Sovine reasonably believed based on the information available to him at the time of the meeting on December 8, 2006, that if Murmer discussed personnel matters giving rise to his suspension with pay with staff or students in the School, it would likely result in further significant disruption of the learning environment at the School.

21. Evans reasonably believed based on the information available to him at the time of the meeting on December 8, 2006, that if Murmer discussed the personnel matters giving rise to his suspension with pay with staff or students in the School, it would likely result in further significant disruption of the learning environment at the School.

22. Sovine conducted an investigation by obtaining the statements of Rieser, Wagstaff, Delaney and Rosenzweig, as well as the statements of two students. Sovine prepared a memorandum concerning the events at issue and forwarded it to Evans with the statements of the teachers and students. Sovine did not interview more teachers and more students, because he did not want to contribute to an increase in the amount of disruption of the learning environment at the School

23. On December 8, 2006, Murmer left the School after collecting some personal items and drove directly to the house of Alan Jackson and Missie Jackson. He told them of the administrative leave without pay.

24. On December 8, 2006, Murmer called his mother and others about the administrative leave without pay by telephone.

25. On December 8, 2006, Murmer told Bradley Ellis about his administrative leave without pay.

26. On December 12, 2006, Sovine sent out an e-mail to all employees at Monacan High School acknowledging that a teacher was on administrative leave with pay, as was being reported in the news, and asking that the employees refrain from commenting on this personnel matter. Sovine further instructed the teachers that if any students raise the subject, the teachers should respond that they cannot discuss it.

27. Murmer after his suspension made a link to the video clip of the Internet Video available on the website buttprintart.com, which he controlled. Murmer acknowledged this at the School Board hearing on January 9, 2007.

28. On January 9, 2007, the School Board conducted a hearing and received testimony from Sovine, Rieser, and Murmer, the School Board saw the Internet Video, the School Board received the written statements of Sovine, Delaney, Wagstaff, Rieser, and Rosenzweig. Sovine testified, "I do not believe he can effectively teach [anymore]." Sovine testified that students had viewed the video and this was the cause of the disruptions of the learning environment at the School.

29. The statement given by School Board Chairman Marshall Trammell in the January 9, 2007 meeting minutes sets forth the reasons for the termination of the Plaintiff's employment. It was co-written by all the members of the School Board as part of the deliberations of the School Board and the School Board agreed that Mr. Trammell would deliver that statement on the record for the School Board meeting minutes to explain the reasons for their decision.

30. The School Board terminated Murmer's employment based on the disruption to the classroom environment that resulted from students viewing and discussing the Internet Video. The School Board concluded that Murmer knew or should have known when he agreed to be recorded for the appearance on Unscrewed with Martin Sargent that the recording might become available to students in the School and, if it did, then it would likely cause disruption to the learning environment in the School. Based on the foregoing, the School Board concluded that Murmer failed to act in accord with the Core Values by his failure to act with Respect, Responsibility, and Accountability. Additionally, by his failure to act in accord with the Core Values, the Plaintiff failed to Act as a proper role model. The School Board also based its decision on its reasonable anticipation that reinserting the Plaintiff into the classroom would cause additional disruption to the learning environment of the School and that Murmer would be impeded from performing his function as a teacher.

31. Evans did not terminate the Plaintiff's employment with the School Board.

- 4 -

- 5 -

32. Sovine did not terminate the Plaintiff's employment with the School Board.

        Respectfully submitted,

        CHESTERFIELD COUNTY SCHOOL BOARD,
        DAVID SOVINE, Principal, Monacan High School,
        LYLE EVANS, Associate Superintendent for
        Human Resources

        By Counsel

/s/ Travis A. Sabalewski
D. Patrick Lacy, Esquire (VSB # 07190)
Travis A. Sabalewski, Esquire (VSB #47368)
Stacy L. Haney, Esquire (VSB # 71054)
Eric B. Martin, Esquire (VSB # 75157)
REED SMITH LLP
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1700
Richmond, Virginia 23219-4069
(804) 344-3400 (Telephone)
(804) 344-3410 (Facsimile)
placy@reedsmith.com
tsabalewski@reedsmith.com
shaney@reedsmith.com
emartin@reedsmith.com

    Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of February, 2008, a true copy of the foregoing was served by ECF on the following:

>Rebecca K. Glenberg, Esquire
>American Civil Liberties Union of
>  Virginia Foundation, Inc.
>530 E. Main Street, Suite 310
>Richmond, VA 23219
>rglenberg@acluva.org

>/s/ Travis A. Sabalewski
>D. Patrick Lacy, Esquire (VSB # 07190)
>Travis A. Sabalewski, Esquire (VSB #47368)
>Stacy L. Haney, Esquire (VSB # 71054)
>Eric B. Martin, Esquire (VSB # 75157)
>REED SMITH LLP
>Riverfront Plaza - West Tower
>901 East Byrd Street, Suite 1700
>Richmond, Virginia  23219-4069
>(804) 344-3400 (Telephone)
>(804) 344-3410 (Facsimile)
>placy@reedsmith.com
>tsabalewski@reedsmith.com
>shaney@reedsmith.com
>emartin@reedsmith.com

>Counsel for Defendants