UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| STEPHEN MURMER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| | ) | Case No.: 3:07CV608 |
| CHESTERFIELD COUNTY SCHOOL | ) | |
| BOARD, DAVID SOVINE, Principal, | ) | |
| Monacan High School, LYLE EVANS, | ) | |
| Associate Superintendent for Human | ) | |
| Resources, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

### JOINT PRETRIAL STATEMENT

COME NOW, Plaintiff Stephen Murmer and Defendants Chesterfield County School Board, David Sovine and Lyle Evans, pursuant to the Court's Initial Pretrial Order (December 13, 2007), and file this Joint Pretrial Statement to govern the trial of this case scheduled to begin on March 11, 2008.

Plaintiff Stephen Murmer brought this action under 42 U.S.C § 1983 and the First Amendment of the United States Constitution, challenging his termination and seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States; retaliating against Plaintiff for his exercise of constitutionally protected speech; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff. Defendants deny the allegations.

**A.    STIPULATION OF UNDISPUTED FACTS**

1.    Plaintiff Stephen Murmer was employed as an art teacher by Chesterfield County Public Schools from 1999 to January 9, 2007.

2.    Plaintiff was an art teacher at Monacan High School from the fall of 2002 to January 9, 2007.

1

3.      In October 2003, plaintiff appeared in a segment of a cable television show called "Unscrewed With Martin Sargent," under the name Stan Murmur.

4.      At some subsequent time, a clip of plaintiff's appearance on Unscrewed With Martin Sargent was posted to YouTube, a website on which users post videos.

5.      On December 8, 2006, defendant David Sovine called plaintiff to his office for a meeting with himself and defendant Lyle Evans.

6.      At the December 8, 2006 meeting, defendants Sovine and Evans showed plaintiff the YouTube video, and asked if he was the person who appeared in it.  Plaintiff acknowledged that he was.

7.      On December 11, 2006, Chesterfield County Superintendent Marcus Newsome sent plaintiff a letter stating that he was recommending plaintiff's dismissal to the School Board.

8.      On January 9, 2007, defendant Chesterfield County School Board held a closed hearing to determine whether plaintiff's employment should be terminated.

9.      Following the closed hearing, the School Board publicly announced that plaintiff's employment was terminated.

## B.      TRIAL EXHIBITS TO WHICH THERE ARE NO OBJECTIONS.

I.      Plaintiff's Proposed Trial Exhibits:

| | Plaintiff | X | Stephen Murmer | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Defendant | ___ | vs. | | C.A. No. 3:072CV608 | | | |
| | Joint | | Chesterfield County School Board et al. | | | | | |

| TAB | DESCRIPTION | BATES NUMBER/REFERENCE | Defendants' Objections | Marked for I.D. | Received in Evidence | Witness |
|---|---|---|---|---|---|---|
| A | YouTube video of Plaintiff's appearance on Unscrewed with Martin Sargent | Produced by Plaintiff without a Bates Number | None | | | |
| C | January 3, 2007 letter to Plaintiff from Marcus Newsome re recommended dismissal | Murmer000088 | None | | | |
| M | Notice of proposed dismissal of Stephen Murmer signed by Marcus Newsome | Murmer000047 | None | | | |
| N | December 11, 2006 letter to Plaintiff from Dr. Lyle Evans re "suspended with pay…pending the resolution of your recommended dismissal" | Murmer000046 | None | | | |
| O | April 2, 2004 letter from Deborah D. Hinton to Plaintiff re "website entitled 'smurmer' or 'stanmurmer'" | Murmer000069 | None | | | |
| P | Curriculum Vita of Dr. Robert Cook | | None | | | |
| Q | Curriculum Vita of John Ravenal | | None | | | |

In addition, plaintiff reserves the right to rely upon any exhibits identified by the defendants.

II.    Defendants Trial Exhibits

|  |  | Stephen Murmer | | | | | |
|--|--|--|--|--|--|--|--|
| Plaintiff | ___ | vs. | | C.A. No. 3:072CV608 | | | |
| Defendant | X | Chesterfield County School Board et al. | | | | | |
| Joint | | | | | | | |

| Tab | Description | Bates Number/ Reference | Plaintiff's Objections | Marked for ID | Received in Evidence | Witness |
|--|--|--|--|--|--|--|
| 10 | Email from David T. Sovine to Monacan High re: Personnel Issue | CCSB5000824 | None | | | |
| 11 | Letter from Lyle Evans to Murmer | CCSB5000555 | None | | | |
| 12 | Chesterfield County School Board Meeting Minutes re: Adoption of Core Values | CCSB5000361-366 | None | | | |
| 13 | Letter of Billy K. Cannaday, Jr. Ed.D. to Colleagues prior to 2002-2003 academic year. | CCSB5000753 | None | | | |
| 14 | Letter of Billy K. Cannaday, Jr. Ed.D. to Colleagues prior to 2003-2004 academic year. | CCSB5000754 | None | | | |
| 15 | Letter of Billy K. Cannaday, Jr. Ed.D. to Colleagues prior to 2004-2005 academic year. | CCSB5000369 | None | | | |

4

| Tab | Description | Bates Number/ Reference | Plaintiff's Objections | Marked for ID | Received in Evidence | Witness |
|---|---|---|---|---|---|---|
| 16 | Letter of Billy K. Cannaday, Jr. Ed.D. to Colleagues prior to 2005-2006 academic year. | CCSB5000368 | None | | | |
| 17 | Letter of Billy K. Cannaday, Jr. Ed.D. to Colleagues prior to 2006-2007 academic year. | CCSB5000367 | None | | | |
| 18 | Video of Plaintiff's Appearance on Unscrewed with Martin Sargent | Produced by Plaintiff without Bates Number | None | | | |
| 21 | School Board Meeting Minutes for January 9, 2007 | CCSB5000370-384 | None | | | |
| 22 | Declaration of Carol Timpano concerning School Board Meeting Minutes, Recording, and Transcript of hearing | | None | | | |

## C.    TRIAL EXHIBITS TO WHICH THERE ARE OBJECTIONS.

### I.    Plaintiff's Objections to Exhibits Intended To Be Offered By Defendants:

| Tab | Date | Description | Bates Number/ Reference | Objections |
|---|---|---|---|---|
| 1 | 12/08/2006 | Memorandum to Lyle Evans from David Sovine re: conference with | CCSB5000339 | Hearsay – FRE 802 |

*Overruled Admissible ~~took not~~ for Truth but to show falls for [illegible]*

| | | Mr. Steve Murmer | | |
|---|---|---|---|---|
| 2 | 12/07/2006 | Memorandum to David Sovine from Linda Wagstaff re: 5th period on Thursday, Dec. 7th, 2006. | CCSB5000645 | Lack of Personal Knowledge /Hearsay-FREs 602 & 802 |
| 3 | 12/08/2006 | Classroom events, 6th period sports, entertainment and recreation marketing by Kerri Rosenzweig | CCSB5000646 | Lack of Personal Knowledge /Hearsay-FREs 602 & 802 |
| 4 | 12/19/2006 | Classroom events, 6th period sports, entertainment and recreation marketing by Kerri Rosenzweig (Revised) | CCSB 5000796-797 | Lack of Personal Knowledge /Hearsay-FREs 602 & 802 |
| 5 | 12/08/2006 | Documentation from Anne Rieser | CCSB 5000644 | Hearsay-FRE 802 |
| 6 | 12/08/2006 | Note from Joi Delaney re: student discussions at basketball game on 12/07/2006 | CCSB5000647 | Lack of Personal Knowledge /Hearsay-FREs 602 & 802 |
| 7 | 12/19/06 | Revised note from Joi Delaney re: student discussions at basketball game on 12/07/2006. | CCSB5000799 | Lack of Personal Knowledge /Hearsay-FREs 602 & 802 |
| 8 | 12/08/2006 | Monacan High School incident report from student | CCSB5000648 | Lack of Personal Knowledge /Hearsay/ Lack of Authenticat ion- FREs 602, 802 & 901 |
| 9 | 12/08/2006 | Monacan High School incident report from student | CCSB5000649 | Lack of Personal Knowledge /Hearsay/ Lack of |

| | | | | Authentication- FREs 602, 802 & 901 |
|---|---|---|---|---|
| 19 | 01/09/2007 | Audio Recording of the January 9, 2007, hearing concerning the recommendation that the School Board terminate Mr. Murmer's employment | Produced by Defendants without Bates Number | Relevance/ Lack of Personal Knowledge /Leading Questions/ Hearsay/- FREs 402, 602, 611 (c), 701 & 802 |
| 20 | 01/09/2007 | Transcript of Chesterfield County Public Schools School Board Hearing, January 9, 2007, transcribed by Heather R. Gunn, CCR | Produced by Defendants without Bates Number | Relevance/ Lack of Personal Knowledge /Leading Questions/ Hearsay/- FREs 402, 602, 611 (c), 701 & 802 |
| 23 | 01/16/2007 | Email from Sstan@buttprintart.com to Dave@poopreport.com re: in the news | Murmer000910 92 | Relevance- FRE 402 |
| 24 | 05/10/2006 | Memo re: Conference with Steve Murmer regarding inappropriate classroom behaviors | CCSB000594 | Relevance/ Hearsay- FREs 402 & 802 |

*[handwritten annotations in right margin: "Same as #1", "Same as #1", "Objection Withdrawn", "Obj. Sustained"]*

II.   <u>Defendants' Objections to Exhibits Intended To Be Offered By Plaintiff:</u>

| Plaintiff  X | Stephen Murmer | |
|---|---|---|
| Defendant ___ | vs. | C.A. No. 3:072CV608 |
| Joint | Chesterfield County School Board et al. | |

| TAB | DESCRIPTION | BATES | Defendants' | Marked | Received | Witness |
|---|---|---|---|---|---|---|

| | | NUMBER/REFERENCE | Objections | for I.D. | in Evidence | |
|---|---|---|---|---|---|---|
| B | Daily Report for buttprintart.com | Murmer000079-81 | Relevance, Hearsay FREs 402, 802 | | | Obj. Sustained Rule 403 |
| D | Picture of Plaintiff's painting entitled "Tulip Butts" accessible through buttprintart.com | | Relevance FRE 402 | | | Obj. Overrule |
| E | Picture of Plaintiff's painting entitled "Woodland" accessible through buttprintart.com | | Relevance FRE 402 | | | Obj. w/drawn |
| F | Picture of Plaintiff's painting entitled "Cattails" accessible through buttprintart.com | | Relevance FRE 402 | | | |
| G | Picture of Plaintiff's painting entitled "Sunflower" accessible through buttprintart.com | | Relevance FRE 402 | | | Obj. Overruled |
| H | Picture of Plaintiff's painting entitled "Butterfly" accessible through buttprintart.com | | Relevance FRE 402 | | | |
| I | Picture of Plaintiff's painting entitled "Laura's Hawaiian Vacation" accessible through buttprintart.com | | Relevance FRE 402 | | | |
| J | Picture of Plaintiff's painting entitled "Poppies" accessible through buttprintart.com | | Relevance FRE 402 | | | |
| K | Picture of Plaintiff's painting entitled "Sittin Pretty" accessible through | | Relevance FRE 402 | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | buttprintart.com | | | | | |
| L | Picture of Plaintiff's painting entitled "Daisy" accessible through buttprintart.com | | | Relevance FRE 402 | | *Obj. Overruled* |
| R | Index to video exhibition of John Ravenal | | | Relevance, Hearsay *Obj w/drawn* FREs 402 and 802 *Obj w/drawn* | | *Obj. Overruled* |
| S | Summary of emails received by Defendants plus attachments | | | Relevance, Lack of personal knowledge, Opinion Testimony by Lay Witnesses, Hearsay, FREs 402, 602, 702, 802 *Obj Sustained hearsay* | | |

## D.   DISCOVERY MATERIAL INTENDED TO BE OFFERED.

### I.   Plaintiff's Deposition Designations.

**1.   Excerpts from the Deposition of Michele Murmer**

**P6 L4-10:**   Has been married 10 years since 1997.

**P16 L18- P17 L23:**   The events of December '06 and January '07 were a major stressor in Mr. Murmer's life.

**P20 L16-19:**   The events became more of an impact when Mr. Murmer was terminated.

**P27 L20-P31 L4:**   Emotional impact and stress related to Mr. Murmer's termination; how his termination and the lawsuit has affected him; he does not go out, does not ride his motorcycle, isn't sleeping, is very anxious.

| | |
|---|---|
| **P33 L4-P34 L12:** | Loss of reputation, humiliation and embarrassment caused by these events. He didn't want to be known for his art...using pseudonym. |
| **P36 L7-17:** | Mr. Murmer does not leave the house unless she is with him. |

## 2.    Excerpts from Deposition of John Ravenal

| | |
|---|---|
| **P3 L6-23:** | John Ravenal is curator of modern and contemporary art at the Virginia Museum of Fine Arts. Description of his duties as curator of modern and contemporary art. |
| **P4 L12-P6 L2:** | Has been curator of modern and contemporary art for Virginia Museum of Fine Art for 9 years. Description of employment and educational background. Offered as expert in contemporary and modern art history. |
| **P6 L4-20:** | Witness has viewed works by Stephen Murmer on the internet on Murmer's website. Witness would characterize those images as art. |
| **P6 L21-P9 L3:** | Description of other artists that used their bodies or live models to make art including Yves Klein, Jasper Johns and others. |
| **P9 L5-P9 L22:** | Comparison of Murmer's artwork to that of other artists and how it relates to the examples given previously by witness. |
| **P9 L24-P18 L22:** | Description of exhibitions organized by the witness of artists who use the body to create art. Description of video exhibition organized by witness of artists that use the body to create art. Comparison of video of Murmer's video exhibition and that of the video exhibition compiled by witness. Segments of Murmer video that are relevant to the video compilation prepared by witness. Does not find Murmer's work as provocative as the examples he offers but feels it participates in the same tradition of using the body as a tool. Has seen the Murmer video demonstration.   Finds the video mildly provocative and intentionally funny. |
| **P26 L9-P27 L11:** | Discussion of precedents for demonstrating the artistic process outside the context of performance art. |

### II.    Designation of Defendant's Interrogatory Answers

Plaintiff designates Defendants' response to Interrogatory No. 9 of Plaintiff's First Set of Interrogatories.

### III.    Defendants' Objections to Plaintiff's Discovery Designations

10

| DESIGNATION | DESCRIPTION | OBJECTION(S) | |
|---|---|---|---|
| Michelle Murmer<br><br>P16 L18- P17 L23: | The events of December '06 and January '07 were a major stressor in Mr. Murmer's life. | Lack of personal knowledge/foundation<br><br>FRE 602 | *Overruled* |
| Michelle Murmer<br><br>P20 L16-19: | The events became more of an impact when Mr. Murmer was terminated. | Lack of personal knowledge/foundation<br><br>FRE 602 | *W/drawn* |
| John Ravenal<br><br>P6 L4-20 | Witness has viewed works by Stephen Murmer on the internet on Murmer's website. Witness would characterize images as art. | Relevance<br><br>FRE 402 | *Overruled* |
| John Ravenal<br><br>P6 L21- P9 L3 | Description of other artists that used their bodies or live models to make art including Qves Klein, Jasper Johns and others. | Relevance<br><br>FRE 402 | *Overruled* |
| John Ravenal<br><br>P9 L5- P9 L22 | Comparison of Murmer's artwork to that of other artists and how it relates to the examples given previously by witness. | Relevance<br><br>FRE 402 | *Overruled* |
| John Ravenal<br><br>P9 L24- P18 L22 | Proposed alternate Description of designated testimony:  Witness describes exhibits that he organized.  Witness opines that Murmer's paintings are similar to the paintings of Yves Klein and the others because they dispense with tools between the painter and the painting.  Witness discusses videos of Klein, Arnold, and Donnegan, which the witness considers to be performance art.  Witness opines that Murmer's appearance on Unscrewed with Martin Sargent appears to be more of a demonstration than intended as a stand-alone work of art.  Murmer's paintings and the Video are mildly provocative.  Murmer's Video is intentionally funny. | Relevance<br><br>FRE 402 | *Obj w/drawn* |

III.   Defendants' Deposition Designations

**Excerpts from the Deposition of John Ravenal taken on February 4, 2008**

| Pg 19 Ln 17 – Pg 20 Ln 6 | Ravenal has never spoken with Murmer or Martin Sargent. |
|---|---|

| | |
|---|---|
| Pg 20 Ln 14 – Pg 21 Ln 3 | It is Ravenal's opinion that the Plaintiff's appearance on Unscrewed with Martin Sargent (the "Appearance") is more a demonstration than performance art. Ravenal does not have sufficient information to determine whether the Appearance was performance art. Among the information that he would need is information about the intent of the participants. |
| Pg 21 Ln 10 – Pg 23 Ln 13 | In Ravenal's opinion all the videos that he discussed in his direct examination (Klein, Donegan, and Arnold) are definitely performance art, but the Plaintiff's Appearance is more in the category of a mere demonstration. |
| Pg 23 Ln 25 – Pg 24 Ln 14 | The Plaintiff's Appearance is much like a typical interview of a movie star on a late night television show, e.g. The Tonight Show or Late Night with David Letterman, except the movie stars do not typically disrobe in the interviews as much as the Plaintiff did in his Appearance. |
| Pg 24 Ln 16 – Pg 26 Ln 1 | Ravenal opines that interviews of movie stars on late night television about their upcoming movie releases are not performance art, because they are primarily promoting their movie and seeking to entertain through the interview. The Plaintiff's Appearance bears strong similarities to such movie star appearances on late night television. |

E.    **WITNESS LISTS.**

I.    Plaintiff intends to call or to read the depositions of the following witnesses:

A.    Stephen Murmer

Mr. Murmer, whose address is 8882 Tara Lane, Auburn, AL, 36830, will testify as a fact witness about each of the matters alleged in the Complaint for Declaratory, Injunctive and Monetary

12

Relief and the factual contentions set forth in the factual contention section below.

                B.      Dr. Robert W. Cook, Jr.

Dr. Cook, whose business address is University of Richmond, 1 Gateway Road, Richmond, Virginia 23173, will testify as an expert witness regarding Mr. Murmer's economic damages.

                C.      Allan Jackson

Mr. Jackson, whose address is 2437 Krossridge Road, Richmond, VA 23236, will testify as a fact witness about Mr. Murmer's compensatory damages.

                D.      Michelle Murmer (by deposition)

Ms. Murmer, whose address is 8882 Tara Lane, Auburn, AL, 36830, will testify as a fact witness about Mr. Murmer's compensatory damages.  Ms. Murmer lives outside the subpoena power of this Court and may testify by deposition.

                E.      John B. Ravenal  (by deposition)

Mr. Ravenal, whose business address is Virginia Museum of Fine Arts, 200 North Boulevard, Richmond VA 23220, will testify as an expert witness on modern art about Mr. Murmer's work as an artist and put Mr. Murmer's art in the context of other contemporary artists.

              II.      Defendant intends to call or to read the depositions of the following witnesses:

A.      Defendants expect to call the following fact witnesses at trial.

              1.      David Sovine
                         Monacan High School
                         11501 Smoketree Drive
                         Richmond, Virginia 23236
                         (804)378-2480

              2.      Dr. Lyle Evans
                         9900 Krause Road
                         Chesterfield, VA 23832
                         (804)748-1405

              3.      Marshall Trammell

9900 Krause Road
Chesterfield, VA 23832
(804)748-1405

In addition the Defendants may call the following fact witnesses at trial.

4.    Ms. Kerri Rosenzweig
Monacan High School
11501 Smoketree Drive
Richmond, Virginia 23236
(804)378-2480

5.    Ms. Linda Wagstaff
Monacan High School
11501 Smoketree Drive
Richmond, Virginia 23236
(804)378-2480

6.    Ms. Joi Delaney
930 Roll Drive
Midlothian, VA 23114
(804) 794-0309

7.    Ms. Anne Rieser
Monacan High School
11501 Smoketree Drive
Richmond, Virginia 23236
(804)378-2480

8.    Mr. Bradley Ellis
2315 Ingram Avenue
Richmond, VA 23224

9.    Allen Jackson
2437 Krossridge Road
Richmond, VA 23236
(804)276-9393

10.    Ms. Deborah D. Hinton
Chesterfield Technical Center
10101 Courthouse Road
Chesterfield, Virginia 23832
(804)768-6160

11.    Dr. Marcus Newsome
9900 Krause Road
Chesterfield, VA 23832

14

(804)748-1405

12.    Ms. Debra Marlow
9900 Krause Road
Chesterfield, VA 23832
(804)748-1405

13.    Ms. Jane Rowley
Cosby High School
14300 Fox Club Parkway
Midlothian, VA 23112
(804)639-8340

14.    Carol Moore
Monacan High School
11501 Smoketree Drive
Richmond, Virginia 23236
(804)378-2480

F.    **FACTUAL CONTENTIONS**

I.    **Plaintiff's Factual Contentions.**

1.    Plaintiff Stephen Murmer ("Murmer") was employed as an art teacher by Chesterfield County Public Schools from 1999 to January 9, 2007. From the fall of 2002 to January 9, 2007, he taught at Monacan High School. (Murmer testimony.)

2.    In addition to teaching, Murmer is also an artist. (Murmer testimony.)

3.    Prior to his employment at Chesterfield County Public Schools, Murmer developed an artistic technique of using his buttocks and other body parts as a stamp with which to imprint paint on canvas. He created artwork using this technique under the pseudonym "Stan Murmur." Murmer's artwork participated in a tradition, going back to the early part of the twentieth century, in which artists uses their own body or the bodies of others to make imprints on paper or canvas. (Murmer testimony; Ravenal dep. 6:18-16:19; Plf.'s Ex. D-L, R.)

4.    Murmer continued to make his artwork throughout his tenure at Monacan. However, he never engaged in his artwork at school, nor did he ever discuss his artwork or artistic technique with any students. (Murmer testimony.)

5.    In October 2003, Murmer appeared in a segment of a short-lived cable television show called "Unscrewed With Martin Sargent," under the name Stan Murmur. On the show, he appeared in a disguise consisting of a towel wrapped around his head in a turban, a Groucho Marx nose and glasses, a white bathrobe, and a black swim thong. (Murmer testimony; Plf.'s Ex. A.)

6.    On the television show, "Stan Murmur" talked about his artwork and demonstrated his technique. Although he took off the bathrobe to show how he created his art, he never appeared nude, wearing at all times the black swimsuit. (Murmer testimony; Plf.'s Ex. A.)

16

7.      It is not unusual for artists to demonstrate their technique on television programs. (Ravenal dep. 27:5-11.)

8.      In 2004, it came to the attention of then-principal Deborah Hinton that Murmer sold his artwork on an Internet website, and she initiated an investigation. At that time, Murmer told Hinton about his television appearance. The investigation was closed after Murmer agreed to remove three photographs from the website. (Murmer testimony.)

9.      Some years after the television show was taped, a clip of Murmer's appearance on Unscrewed With Martin Sargent was posted to YouTube, a website on which users post videos. Murmer had no role in posting the video to YouTube, and does not know how it ended up on the site. (Murmer testimony.)

10.     On December 8, 2006, defendant David Sovine ("Sovine"), the principal of Monacan High School, summoned plaintiff to his office for a meeting with himself and defendant Lyle Evans ("Evans"). At the meeting, they showed Murmer the YouTube video, and asked if he was the person who appeared in it. Murmer acknowledged that he was. Evans told Murmer that, on Sovine's recommendation, Murmer would be suspended for five days without pay pending a full investigation. Sovine instructed Murmer that he was not to discuss this matter with anyone. Evans added that Murmer's paid suspension could be turned into one without pay. (Murmer testimony.)

11.     Later that day, Sovine requested written statements from teachers Kerri Rosenzweig, Linda Wagstaff, Ann Reiser, and Joi Delaney regarding alleged disruptions caused by plaintiff's artwork and the YouTube video. Delaney's statement did not actually describe a classroom disruption, but a conversation about the YouTube video that she overheard at a basketball game. This was the full extent of the defendants' "investigation" of Murmer. (Sovine testimony.)

12.     Other than Rosenzweig, Wagstaff, Reiser, and Delaney, none of the approximately 110 teachers at Monacan High School made any complaints to the administration about the YouTube video. (Sovine testimony; Def.'s Ans. to Interrog. 9; Moore dep. 48:23-49:2)

13.     Also on December 8, 2006, Chesterfield County School Board spokesperson Debra Marlow told Fox News in Richmond, "I can only confirm that an art teacher at Monacan is on administrative leave because of the way he does his art." Because of Sovine's instructions not to talk to anyone, Murmer made no comments to the media until after he was terminated. (Murmer testimony.)

14.     On December 11, 2006, Evans sent a letter to Murmer stating that Mumer was suspended with pay, and that he intended to appear before the School Board on January 9, 2007 to ask that the suspension be made without pay. On the same day, Chesterfield County Superintendent Marcus Newsome sent plaintiff a letter stating that he was recommending plaintiff's dismissal to the School Board. (Plf.'s Ex. 13-14.)

15.     On December 19, 2006, after the decision to recommend Murmer's termination had already been made, teachers Rosenzweig and Delaney submitted revised versions of their statements. (Sovine testimony.)

16.     On January 9, 2007, the Chesterfield County School Board held a closed hearing to consider Murmer's employment status, following which the School Board publicly announced that Murmer would be terminated. (Murmer testimony.)

17.     Murmer was terminated solely because of the YouTube video and students' and teachers' alleged reaction to it, and not for any reasons relating to his performance as a teacher. (Trammel testimony.)

18.     There is no evidence that any disruptions resulted from the YouTube video in any classrooms other than those of Rosenzweig, Wagstaff, or Reiser. No disruptions occurred in Murmer's own classroom. To the extent that any classroom disruptions occurred after December 8, 2006, they were related to Murmer's suspension and termination, rather than the YouTube video itself. (Def.'s Ans. to Interrog. 9; Rosenzweig testimony)

19.     Since his termination, Murmer has not been able to find employment. The present value of his gross lost income is $1,091,132. (Murmer testimony; Cook testimony.)

20.     Since his termination, Murmer has experienced mental and emotional difficulties including depression, anxiety, and inability to take pleasure in activities he once enjoyed. (Murmer testimony; Jackson testimony; Michelle Murmer dep. 27:20-31:4, 33:4-34:12.; 26:7-17.)

## II.   Defendant's Factual Contentions.

1.     In 1999, Defendant Chesterfield County School Board adopted the Core Values of Respect, Responsibility, Accountability, and Honesty, as standards by which all members of the community of the Chesterfield County Public Schools, including teachers, were thereafter expected to abide.

2.     Murmer began teaching at Monacan High School (the "School") in August of 2002.

3.     Murmer began creating butt paintings prior to becoming employed by the School Board. To create the butt paintings, Murmer typically: (1) sits in paint without any garments between the paint and his bare buttocks, scrotum, and penis; and (2) presses his paint covered body parts onto a canvas.

4.     Murmer annually received letters from the Superintendent of the Chesterfield County Public Schools from 2002 through 2006, reminding him of the Core Values of the School Board and his responsibility to serve as a role model. Murmer read these letters and understood that the Core Values applied to him as a teacher and that he was responsible to serve as a role model.

5.     In or around October of 2003, Murmer voluntarily appeared for the video recording of an interview concerning his butt paintings for use on a television show called Unscrewed with Martin Sargent. During portions of the videotaped interview, the Plaintiff appeared in a skin tight black thong, which revealed his bare buttocks, he sat in paint and then sat on a canvas to leave a print from the paint on his buttocks.

6.     During the week of December 4, 2006, multiple significant classroom and hallway disruptions occurred at the School from students discussing Murmer's butt paintings and his

appearance on Unscrewed with Martin Sargent, which was now readily available for viewing on the Internet (the "Internet Video").

7.    Disruptions began on December 4, 2006, in a Sports Marketing class taught by Kerrie Rosenzweig, which was being conducted in a computer lab. Students in the class began discussing and then arguing about whether Murmer was the butt painter, whom they had seen on the Internet. At least one student searched for websites relating to Murmer and butt painting during the class. Ms. Rosenzweig repeatedly attempted to redirect the students back to their work, but the students continued raise the subject. The students directly asked Rosenzweig her opinion on these matters and Rosenzweig continued to try to redirect them.

8.    On December 6, 2006, when the same Sports Marketing class met again, Rosenzweig used several techniques in an effort to minimize disruption from students discussing Murmer, butt painting and the Internet Video, but she had limited success. In particular, Rosenzweig changed her plans to take the students back to the computer lab, even though they needed to complete research on a report that she had assigned to them. Instead, Rosenzweig followed a lecture format. Despite her efforts, classroom level discussion and side conversations about Murmer and butt painting repeatedly arose among the students in the class. Experiencing disruptions during a lecture when students were to be taking notes was unusual for Rosenzweig.

9.    Rosenzweig was confronted again by students in the same class on Friday, December 8, 2006, the day on which Murmer was suspended with pay. This time the students accused her of causing Murmer to be fired. On the same day, students also disrupted Rosenzweig's other classes by students raising issues concerning Murmer, butt painting, and the Internet Video.

10.   On December 7, 2006, during an Advanced Placement Latin class taught by Linda Wagstaff students confronted her with questions concerning Murmer, butt painting, and the Internet Video. Wagstaff attempted to end these disruptions by telling the students that they should not spread rumors and by other methods. Despite Wagstaff's efforts, the students persisted throughout the class in discussing, whispering, and laughing about Murmer, butt painting, and the Internet Video. Wagstaff lost valuable class time as a consequence of these disruptions and the class completed less work in the class than otherwise would have been completed.

11.   Anne Rieser, an art teacher and Chair of the Arts department at the School, experienced disruptions from students discussing Murmer, butt painting, and the Internet Video in her Art III and Art IV classes on December 6, in her Photography I class on December 7, 2006, and in her Art IV class on December 8, 2006. Aside from classroom level comments, in these classes, there was whispering and side conversations throughout class on these subjects. As a consequence of these numerous disruptions, students completed less work in these classes.

12.   In one of Murmer's classes on December 8, 2006, at the beginning of class, while Rieser assisted the substitute teacher for the class in setting up a video to show to the class, one of the students raised the subject of Murmer and his butt painting by suggesting that the class could watch Murmer's Internet Video.

13.   On December 4, 2006, upon first learning of disruption in the Sports Marketing class, Defendant David Sovine, the Principal of the School, instructed that Rosenzweig should redirect her students, if they raise the subject again.

19

14.     On December 6, 2006, when Sovine received reports that the disruption had grown into some art classes of Rieser and continued in the Sports Marketing class, Sovine again instructed that teachers experiencing disruption should redirect their students.

15.     On December 7, 2006, when Sovine learned that the disruptive classroom discussions of Murmer and butt painting were continuing, growing, and included discussion of an Internet Video that students were viewing, Sovine watched the Internet Video and called Defendant Dr. Lyle Evans, Assistant Superintendent of Human Resources, to request help.

16.     On December 8, 2006, before class, Sovine brought Murmer to his office for a meeting with Evans. Murmer acknowledged that it was him in the Internet Video.

17.     Sovine explained to Murmer that teachers were reporting classroom disruptions based on discussion of Murmer, butt painting, and the Internet Video. Evans informed Murmer that he would be placed on administrative leave with pay based on the disruptions in the classroom environment and to enable time to complete an investigation.

18.     Sovine requested that Murmer not discuss his personnel matters with staff and students of the School. Sovine requested this because he wanted to limit further disruption of the learning environment at the School during the investigation.

19.     At no time did Evans tell Murmer that he was restricted from speaking on any subjects.

20.     Sovine reasonably believed based on the information available to him at the time of the meeting on December 8, 2006, that if Murmer discussed personnel matters giving rise to his suspension with pay with staff or students in the School, it would likely result in further significant disruption of the learning environment at the School.

21.     Evans reasonably believed based on the information available to him at the time of the meeting on December 8, 2006, that if Murmer discussed the personnel matters giving rise to his suspension with pay with staff or students in the School, it would likely result in further significant disruption of the learning environment at the School.

22.     Sovine conducted an investigation by obtaining the statements of Rieser, Wagstaff, Delaney and Rosenzweig, as well as the statements of two students. Sovine prepared a memorandum concerning the events at issue and forwarded it to Evans with the statements of the teachers and students. Sovine did not interview more teachers and more students, because he did not want to contribute to an increase in the amount of disruption of the learning environment at the School

23.     On December 8, 2006, Murmer left the School after collecting some personal items and drove directly to the house of Alan Jackson and Missie Jackson. He told them of the administrative leave with pay.

24.     On December 8, 2006, Murmer called his mother and others about the administrative leave with pay by telephone.

25.     On December 8, 2006, Murmer told Bradley Ellis about his administrative leave with pay.

26.     On December 12, 2006, Sovine sent out an e-mail to all employees at Monacan High School acknowledging that a teacher was on administrative leave with pay, as was being reported in the news, and asking that the employees refrain from commenting on this personnel matter. Sovine further instructed the teachers that if any students raise the subject, the teachers should respond that they cannot discuss it.

27.     Murmer after his suspension made a link to the video clip of the Internet Video available on the website buttprintart.com, which he controlled. Murmer acknowledged this at the School Board hearing on January 9, 2007.

28.     On January 9, 2007, the School Board conducted a hearing and received testimony from Sovine, Rieser, and Murmer, the School Board saw the Internet Video, the School Board received the written statements of Sovine, Delaney, Wagstaff, Rieser, and Rosenzweig. Sovine testified, "I do not believe he can effectively teach [anymore]." Sovine testified that students had viewed the video and this was the cause of the disruptions of the learning environment at the School.

29.     The statement given by School Board Chairman Marshall Trammell in the January 9, 2007 meeting minutes sets forth the reasons for the termination of the Plaintiff's employment. It was co-written by all the members of the School Board as part of the deliberations of the School Board and the School Board agreed that Mr. Trammell would deliver that statement on the record for the School Board meeting minutes to explain the reasons for their decision.

30.     The School Board terminated Murmer's employment based on the disruption to the classroom environment that resulted from students viewing and discussing the Internet Video. The School Board concluded that Murmer knew or should have known when he agreed to be recorded for the appearance on Unscrewed with Martin Sargent that the recording might become available to students in the School and, if it did, then it would likely cause disruption to the learning environment in the School. Based on the foregoing, the School Board concluded that Murmer failed to act in accord with the Core Values by his failure to act with Respect, Responsibility, and Accountability. Additionally, by his failure to act in accord with the Core Values, the Plaintiff failed to Act as a proper role model. The School Board also based its decision on its reasonable anticipation that reinserting the Plaintiff into the classroom would cause additional disruption to the learning environment of the School and that Murmer would be impeded from performing his function as a teacher.

31.     Evans did not terminate the Plaintiff's employment with the School Board.

32.     Sovine did not terminate the Plaintiff's employment with the School Board.

33.     Murmer failed to mitigate his damages, if any, which the Defendants deny.

## G.     TRIABLE ISSUES.

1.     Whether the School Board violated the First Amendment rights of Murmer by terminating his employment.

2.     Whether Sovine imposed limitations on Murmer's speech during the December 8, 2008, meeting that violated Murmer's rights under the First Amendment.

21

3.      Whether Evans imposed limitations on Murmer's speech during the December 8, 2008,

meeting that violated Murmer's rights under the First Amendment.

4.      Whether Evans is entitled to qualified immunity.

5.      Whether Sovine is entitled to qualified immunity.

6.      If any defendant is liable, whether the Plaintiff mitigated his damages.

Entered herein on 4th day of March, 2008.


_____  _REP_
United States District Judge


_____
Tim Schulte (VSB# 41881)
Blackwell N. Shelley, Jr.  (VSB #28142)
Shelley & Schulte, P.C.
700 East Franklin Street, 12th Floor
P.O. Box 605
Richmond VA  23218-0605
(804) 644-9700
(800) 644-9770 [fax]
Tim.Schulte@shelleyschulte.com

Rebecca K. Glenberg (VSB #44099)
American Civil Liberties Union of Virginia
530 East Main Street, Suite 310
Richmond, Virginia 23219
(804) 644-8080
(804) 649-2733 [fax]
rglenberg@acluva.org

      Counsel for Plaintiff


_____
D. Patrick Lacy, Esquire (VSB # 07190)
Travis A. Sabalewski, Esquire (VSB #47368)
Stacy L. Haney, Esquire (VSB # 71054)
Eric B. Martin, Esquire (VSB # 75157)
REED SMITH LLP
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1700

Richmond, Virginia  23219-4069
(804) 344-3400 (Telephone)
(804) 344-3410 (Facsimile)
placy@reedsmith.com
tsabalewski@reedsmith.com
shaney@reedsmith.com
emartin@reedsmith.com

    Counsel for Defendants